IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


**TERRY McCRACKEN,**

       **Plaintiff,**

**v.**                                                         **CIV 02-1069 LH/LAM**

**CORRECTIONAL MEDICAL SERVICE, et al,**

       **Defendant.**


# **PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]**

**THIS MATTER** is before the Court on Defendant's Amended *Martinez* Report and [amended] Motion for Summary Judgment *(Doc. 37)*, filed on August 18, 2004. On August 26, 2002, *pro se* prisoner Plaintiff filed a Civil Rights Complaint Pursuant to 42 U.S.C. § 1983 alleging serious hand injuries caused by the deliberate indifference and denial of adequate medical treatment by Defendant. *(Doc. 1)*

Plaintiff has repeatedly failed to properly serve opposing counsel and failed to provide certificates of services for his pleadings as required by District of New Mexico Local Rules 7.1(b) and 7.4(c). Plaintiff was notified by the Court on two occasions *(Docs. 29 and 33)* that even though he is proceeding *pro se*, he is not excused from following the Federal Rules of Civil Procedure or the

---

[1]The parties are notified that within **ten (10) days** after being served with a copy of these Proposed Findings and Recommended Disposition they may file and serve **written objections** with the Clerk of the U.S. District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

Court's Local Rules. The Court ordered Plaintiff to follow the rules of civil procedure and warned Plaintiff that failure to comply with the rules may result in imposition of sanctions, including dismissal of the case. Although Plaintiff's failure to comply with court rules merits dismissal, such sanction is not favored by this Court and, therefore the merits of Plaintiff's civil rights complaint and Defendant's [amended] Motion for Summary Judgment were carefully reviewed. Accordingly, the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. §636(b)(1), having considered the arguments of counsel, the record, the relevant law, and being otherwise fully informed, finds that Defendant's [amended] Motion for Summary Judgment *(Doc. 37)* is well-taken and **recommends** that it be **GRANTED**.

## I. Factual and Procedural Background

Plaintiff's Civil Rights Complaint pursuant to 42 U.S.C. § 1983 *(Doc. 1)* arises from a hand injury relating to an alleged incident on or about September 11 - 17, 2001. The complaint alleges the following: (1) Eighth Amendment claims of cruel and unusual punishment because Plaintiff was forced to work unsupervised with a broken dolly that did not meet safety standards; and that failure to properly care for his injured hand resulted in permanent disability, and (2) Fourteenth Amendment claims of denial of due process and inadequate medical treatment. *(Id.)*

In September, 2001, Plaintiff was incarcerated at Central New Mexico Correctional Facility ("CNMCF") and alleges he suffered serious injuries when his hand was caught between two oil drums. *(Doc. 1, page 2)*. Plaintiff was moving an 800 pound oil drum on a dolly when the drum fell back off the dolly and trapped his hand between two drums. *(Id.)* Plaintiff alleges his injured hand was only wrapped in an Ace bandage by Correctional Medical Services ("CMS") personnel and not

x-rayed until four days later.[2]  *(Id.)*  When the hand was finally x-rayed, it was splinted by Dr. Romero.  *(Id.)*  The splint allegedly was improperly removed two days later by CMS nurse practitioner, Jimmy Padilla, but Warden Langston had medical personnel re-wrap the hand the same day.  *(Id.)*  Plaintiff states that about a month later he fell, due to a flood in his unit, and when the hand was x-rayed, it revealed splintered bones, ripped ligaments, and nerve damage.  *(Id.)*  Plaintiff alleges that improper medical care by CMS caused irreversible bone damage and permanent disability.  *(Id.)*

On September 25, 2002, the Court issued a Memorandum Opinion and Order dismissing Defendants CNMCF, Lea County Correctional Facility Warden Joe Williams, and Wackenhut Corporation, thereby leaving CMS and Jimmy Padilla as Defendants.  *(Doc. 7)*  On September 29, 2003, the Court issued an order dismissing Defendant Jimmy Padilla due to Plaintiff's failure to provide Padilla's correct address for service of process.  *(Doc. 26)*

On June 30, 2003, the remaining Defendant, CMS, answered the complaint, denying liability and advancing affirmative defenses.  *(Doc. 21)*  On December 18, 2003, the Court ordered Defendant to investigate the incident and the alleged denial of medical treatment and to prepare a *Martinez* Report, to be submitted no later than January 18, 2004.  *(Doc. 27) See Martinez v. Aaron*, 570 F.2d 317, 320 (10th Cir. 1978).  At the time of this order, the Court ordered Defendant to serve a copy of the *Martinez* Report on Plaintiff and gave Plaintiff until February 17, 2004 to respond or object to this report.  *(Id.)*  The Court also specifically gave notice to both parties that a *Martinez* Report may be used in deciding whether to grant summary judgment on Plaintiff's claims, whether by motion or *sua sponte*.  *(Id.)*  Defendant filed the *Martinez* Report and a Motion for Summary Judgment on

---

[2] Correctional Medical Services was the contract medical provider for CNMCF during Plaintiff's incarceration.

3

January 20, 2004. *(Doc. 30)* On February 13, 2004, Plaintiff filed objections to both the *Martinez* Report and Defendant's motion for summary judgment. *(Doc. 32)* In his objections, Plaintiff added the allegation that CMS failed to offer proper medical treatment because they were trying to save money. *(Doc. 32).*

On February 14, 2004, the Court ordered Plaintiff to show cause why his claim should not be dismissed for repeatedly failing to serve Defendant and failing to provide certificates of service, as required by D.N.M.LR-Civ. 7.1(b) and 7.4(c). *(Doc. 33).* Plaintiff answered on March 4, 2004, claiming he had sent copies of his pleadings to Defendant and blaming the prison mail system for any failures. *(Doc. 34).* On August 17, 2004, the Court ordered Defendant to re-submit the *Martinez* Report because Defendant's submission to the Court was incomplete and could not be meaningfully reviewed due to poor copying that deleted page numbers and dates from numerous documents, as well as the complete absence of page numbers on some documents. *(Doc. 36).* Defendant submitted an Amended *Martinez* Report and [amended] Motion for Summary Judgment on August 18, 2004. *(Doc. 37).* Because of unauthorized changes in the document, the Court ordered Defendant to withdraw the original *Martinez* Report and Motion for Summary Judgment *(Doc. 30)* and to re-serve Plaintiff with the amended documents. *(Doc. 38).* The Court gave Plaintiff until September 29, 2004 to submit objections to the amended report. *(Doc. 41).* Plaintiff has not responded to these amended documents.

## II. *Martinez* Report

On August 18, 2004, Defendant filed a comprehensive Amended *Martinez* Report addressing Plaintiff's claims and attaching supporting documents. *(Doc. 37)* The supporting documents include Plaintiff's medical records, New Mexico Department of Corrections policies regarding inmate

grievances and medical requests, and an affidavit from William Shannon, M.D. *(Doc. 37)* Plaintiff was incarcerated at CNMCF from May 1, 2001 until December 7, 2001. *(Id.)*

The medical care Plaintiff received while incarcerated is detailed in Plaintiff's medical records. *(Doc. 37).* Plaintiff does not dispute that he received the care outlined in the records, but claims this care was delayed and inadequate and, therefore, rises to the level of deliberate indifference by CMS. *(Doc. 32).* Plaintiff alleges the date of injury was "[o]n or about September 11 - 17, 2001" *(Doc. 1),* however, the records indicate Plaintiff did not report an injury to medical personnel until October 23, 2001. (*Doc. 37, Exhibit C*). On October 23, 2001, Plaintiff was examined for a left thumb injury, given pain medication and an x-ray was ordered. (*Id.*) The next day, October 24, 2001, Plaintiff's hand was x-rayed and no abnormalities were found. (*Id.*, *Exhibit D*). There was a follow-up check of the hand on October 26, 2001 and the cast was removed. (*Id., Exhibit E*).

On November 28, 2001, Plaintiff saw Dr. Romero and complained of pain and swelling in his left thumb after a slip and fall down stairs. (*Id., Exhibit F*). Dr. Romero placed a spica cast on the hyperextended left thumb, prescribed pain medications (Darvocet and Ibuprofen) and ordered x-rays. *(Id.)* X-rays taken on November 29, 2001, indicate "normal-appearing bone and joint structures" although considerable bone detail was lost due to the spica cast. (*Id., Exhibit G*). On December 3, 2001, the cast was replaced by a splint and the pain medications continued. (*Id., Exhibit H).* Following a move to another correctional facility *(Id., Exhibit A)*, Plaintiff requested and received new bandages and changes in his medication. *(Id., Exhibits K, M, N).* On March 15, 2002, Plaintiff was seen for an orthopedic evaluation by John Harmston, M.D., who diagnosed possible ligament damage. *(Id., Exhibit O).* Dr. Harmston recommended further x-rays, a change in medication to Motrin and a follow-up evaluation in two to three weeks. *(Id.)* X-rays taken on Apri 6, 2002

indicated intact tubular bones of the hand, normal joints, and no significant soft tissue abnormality. *(Id., Exhibit R).*

On May 16, 2002, Plaintiff returned to Dr. Harmston, who diagnosed trigger finger of the left thumb and ordered surgical release of the tendon to be performed on an outpatient basis under local anesthesia. *(Id., Exhibit V).* On June 7, 2002, Plaintiff reported he had again injured his thumb when he caught his hand in a door. *(Id., Exhibit W).* On June 18, 2002, Plaintiff inquired as to whether his hand surgery had been approved and wanted a cast put on his left wrist, but medical personnel declined to do so on the recommendation of the orthopedic doctor. *(Id., Exhibits X, Y).* On June 26, 2002, Dr. Deming noted that a decision on Plaintiff's proposed hand surgery would be made by July 24, 2002. *(Id., page 284).*[3] Defendant CMS ceased providing medical care to the New Mexico Department of Corrections and thereby to Plaintiff on June 30, 2002. *(Id., Exhibit AA).*

### III. Summary Judgment Standard

The Court liberally construes *pro se* litigants' pleadings and holds them to a less stringent standard than required by those prepared by a lawyer. *See Gillihan v. Shillinger*, 872 F.2d 935, 938 (10th Cir. 1989). At the same time, the Court may not assume the role of advocate for the *pro se* litigant, and need not accept as true unsupported conclusory allegations. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). A motion for summary judgment may be granted only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit." *Sports Unlimited, Inc. v. Lankford Enter., Inc.*, 275 F.3d 996,

---

[3]Plaintiff did have tendon release surgery on his left thumb performed by Dr. Harmston on September 3, 2002. *(Doc. 37, page 294).*

6

999 (10th Cir. 2002) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248).  "A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented." *Id.*  When applying this standard, the Court examines the record and makes all reasonable inferences in the light most favorable to the non-moving party.

### IV.  Analysis

Constitutional claims brought by a convicted inmate relating to the conditions of confinement must be brought under the Eighth Amendment, the right to be free from cruel and unusual punishment.  *Rhodes v. Chapman*, 452 U.S. 337, 347-49 (1981); *Berry v. City of Muskogee*, 900 F.2d 1489, 1493 (10th Cir. 1990).  Thus, the Fourteenth Amendment does not apply in this matter.

The government has a constitutional obligation to provide medical care for those whom it is punishing by incarceration and an inmate necessarily relies on prison authorities to treat his medical needs.  *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).  To prevail on an Eighth Amendment claim there is a two-pronged test requiring an inmate to establish that (1) the deprivation complained of is "sufficiently serious" to implicate constitutional protection, and (2) prison officials acted with "deliberate indifference" to the inmate's health or safety.  *Despain v. Upholl*, 264 F.3d 965, 971 (10th Cir. 2001).  Plaintiff's claim fails on both prongs.

A medical need is serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.  *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980).  Plaintiff's hand injury was treated by CMS medical personnel numerous times and treatment included examinations, casting, x-rays, and pain medication.  The x-rays repeatedly indicated a "normal" left hand.  *(Doc. 37 at pages 42, 44, 94, 95, 97, 186)*.  Plaintiff was referred to an orthopedic specialist for evaluation and a

decision was made for surgical intervention. The surgical decision was made in May, 2002 but CMS ceased providing medical care for Plaintiff on June 30, 2002. Plaintiff offers no evidence to contradict the medical records submitted by Defendant in the *Martinez* Report. There is also some question as to the impact of Plaintiff's subsequent re-injury of his thumb (a slip and fall down some stairs on November 28, 2001 and smashing his hand in a door on June 7, 2002) on the eventual necessity for surgery. Plaintiff fails to show there was a "sufficiently serious" deprivation or delay of medical care implicating a constitutional violation.

To prove deliberate indifference one must show that a prison official knew of and disregarded an excessive risk to an inmate's safety or health. The official must have been both aware of the facts from which the inference could be drawn that a substantial risk of serious harm existed, and he must also draw the inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Plaintiff provides no evidence indicating CMS medical personnel were aware of an excessive risk to his health or that CMS medical personnel intentionally deprived Plaintiff of adequate medical care. In fact, the record shows that Plaintiff requested and received numerous examinations, x-rays, casts and bandages, pain medications and an orthopedic evaluation by an outside physician. In a medical context, even

> an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.' Thus, a complaint that a physician has been negligent is diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle,* 429 U.S. at 105-106. Plaintiff's allegations and objections to Defendant's *Martinez* Report are merely conclusory statements, unsupported by evidence. Plaintiff also fails to provide evidence

of any permanent damage to his hand due to the delay or deprivation of medical care provided by CMS.

In this case, the Court considered the merits of Defendant's [amended] Motion for Summary Judgment *(Doc. 37)* as well as the merits of Plaintiff's civil rights complaint, and Plaintiff's failure to comply with court rules.  The Court finds Defendant has met the initial burden of production of evidence to support the [amended] Motion for Summary Judgment, providing evidence there is no genuine issue of material fact and Defendant is, therefore, entitled to judgment as a matter of law. The Court has examined the record, the facts undisputed by the parties as set forth in the Amended *Martinez* Report and [amended] Motion for Summary Judgment, and has made all inferences in the light most favorable to the non-moving party.  *Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000).  It is apparent that "the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio,* 475 U.S. 574, 587 (1986) (*citing First National*, 391 U.S. 253, 289 (1968)).  Plaintiff, as the party opposing summary judgment, "must do more than simply show that there is some metaphysical doubt as to the material facts;" he must come forward with "specific facts showing there is a genuine issue for trial."  *Matsushita*, 475 U.S. 574 at 586-87 (citing Fed. R. Civ. P. 56(e)).  Plaintiff McCracken failed to provide substantive evidence to support his claims and failed to carry his burden in opposition to summary judgment.

**WHEREFORE, IT IS HEREBY RECOMMENDED THAT** Defendant's [amended] Motion for Summary Judgment *(Doc. 37)* be **GRANTED** and that this action be dismissed with prejudice.

**IT IS SO ORDERED.**

_Lourdes A. Martínez_
**LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**